## State of Vermont v. Edward Curavoo

[587 A.2d 963]

No. 88-204

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed January 4, 1991

Motion for Reargument Denied February 4, 1991

---

[5] Because we are remanding for a new hearing, we do not address the additional claims of SRS.

*William H. Sorrell,* Chittenden County State's Attorney, Burlington, and *Rosemary Hull* and *Gary Kessler,* Department of State's Attorneys, Montpelier, for Plaintiff-Appellee.

*Walter M. Morris, Jr.,* Defender General, and *William A. Nelson,* Appellate Defender, Montpelier, for Defendant-Appellant.

**Gibson, J.** Defendant Edward Curavoo appeals from his conviction of being in actual physical control of a motor vehicle while under the influence of intoxicating liquor, in violation of 23 V.S.A. § 1201(a)(2). He argues that the trial court committed reversible error by admitting into evidence his refusals to take a preliminary breath-alcohol-screening test (alco-sensor) and field dexterity tests. We affirm.

On August 27, 1987, at about 7:00 p.m., defendant left work from the Sears parking lot on Shelburne Road in South Burlington. Sometime thereafter, he pulled into the Green Mountain Hardware parking lot, which also is located on Shelburne Road. At approximately 9:00 p.m., police officer James Snyder responded to a report that there was a vehicle, with someone inside, parked in the parking lot with its headlights on.

Snyder testified that he found defendant in the driver's seat, slumped over, with his head hanging down. The vehicle's headlights were on, the keys were in the ignition, and a strong odor of alcohol was noticeable on defendant's breath and from the car's interior. Snyder testified that defendant did not wake up easily, but that when he finally did, he was groggy and had watery, bloodshot eyes. Defendant admitted to drinking a few beers at "Greenie's," which is located about two and one-half miles from the parking lot. Snyder noticed a number of beer cans in the car and asked defendant how he got to the parking lot. Defendant said he walked. Upon being asked how the car got there, defendant said he walked the car there. When defendant got out of his car, he staggered to a nearby vehicle, and nearly fell over when he attempted to lean against it. Over defendant's objection, Snyder testified that defendant refused to take an alco-sensor test or perform field dexterity tests. The

trial court ruled that the testimony was not barred by statute or constitution and was relevant to show defendant's state of mind. The evidence was not, however, referred to again during the trial.

Defendant's testimony, which his girl friend corroborated, presents a somewhat different story. A good friend of defendant's, "Charlie," had died recently in an automobile accident. When driving by Charlie's former place of employment, defendant became despondent and turned into the Green Mountain Hardware parking lot. After parking, he discovered in the car, which he had just purchased from Charlie's estate, a partly full bottle of Jack Daniels and some empty beer cans. While parked, he drank three or four "swigs" of Jack Daniels. He later walked a short distance to a pay phone, where he called his girl friend and asked her to pick him up, a drive of some forty-five minutes. He agreed to leave his headlights on as a signal to help her locate him, as she was not very familiar with the area. Defendant then went back to his car, sat in the driver's seat, put the keys on the dashboard, turned on the headlights, and, because he was tired from a long day's work and lack of sleep, fell into a slumber.

█ On appeal, defendant argues that the trial court erred by allowing into evidence his refusal to perform field dexterity tests. Defendant does not argue that this evidence violates his Fifth Amendment or Vermont constitutional rights. Instead, he contends that, in the absence of positive statutory authorization for a police request, he had the "natural and inherent right to refuse" taking the tests.[1]

██ "All relevant evidence is admissible, except as limited by constitutional requirements or as otherwise provided by statute or by these [rules of evidence] or by other rules prescribed by the Supreme Court." V.R.E. 402. As defendant does

---

[1] Defendant adds that he was not warned that his refusal to perform field dexterity tests would be admissible into evidence. Defendant, however, failed to raise this argument below, and the record is accordingly silent regarding whether warnings were, in fact, provided at the time of the request. As the issue has not been properly preserved, and there being no plain error, we decline to address whether a warning was required. *State v. Ringler*, 153 Vt. 375, 378–79, 571 A.2d 668, 669–70 (1989).

not cite any rule requiring a refusal to perform the field dexterity tests to be excluded,[2] we reject his argument. See *State v. Hoenscheid*, 374 N.W.2d 128, 132 (S.D. 1985) (Morgan, J., concurring specially) (There being no statutory ground for refusal to submit to field dexterity tests, "there is no reason not to consider refusal as evidence of consciousness of guilt.").

Defendant also objects to the introduction of his refusal to take the alco-sensor test. He argues that there is a statutory right to refuse the alco-sensor test on grounds that 23 V.S.A. § 1202(a)'s implied consent provisions do not apply to the alco-sensor test and that admission of the refusal evidence undercuts the statutory right.[3]

Having independently reviewed the record, however, we conclude that the trial court's error, if any, was harmless. Absent defendant's refusal to take the alco-sensor test, the remaining evidence overwhelmingly establishes the statutory requirements for actual physical control of a motor vehicle while under the influence.[4] The intoxication element of "[s]ection 1201(a)(2) is satisfied if defendant was under the influence of intoxicating

---

[2] Defendant's Fourth Amendment argument, citing *State v. Gray*, 150 Vt. 184, 552 A.2d 1190 (1988), is not properly preserved. Defendant objected that he had a constitutional and statutory right to refuse to perform field dexterity tests, without ever stating that he was relying on the Fourth Amendment or Vermont's constitution. This objection does not have the specificity necessary to preserve the Fourth Amendment argument for appeal. See *State v. Byrne*, 149 Vt. 257, 260–61, 542 A.2d 667, 669 (1988) (motion to exclude State's evidence on grounds that "'the stop basically was illegal' . . . lacked the necessary particularity to inform the trial judge of the grounds for the proposed action"). In any event, the seizure was clearly supported by sufficient suspicion and cause to justify the increasing levels of detention. See *State v. Gray*, 150 Vt. at 191, 552 A.2d at 1194–95.

[3] In 1987, the statute was silent regarding whether there was a right to refuse the alco-sensor test. As amended in 1989, the statute expressly provides a right to refuse the alco-sensor test. 23 V.S.A. § 1203(f) provides in pertinent part that "[t]he officer shall inform the person that the person has the right to refuse to submit to the [preliminary screening] test."

[4] 23 V.S.A. § 1201 provides in pertinent part:
   (a) A person shall not . . . be in actual physical control of any vehicle on a highway while:
   . . . .
   (2) under the influence of intoxicating liquor . . . .
   Defendant has made no argument that he was not on a "highway." Thus, the relevant elements are that (1) defendant was in actual physical control of the vehicle (2) while he was intoxicated.

liquor to the slightest degree." *State v. Frigault,* 151 Vt. 537, 538, 561 A.2d 895, 896 (1989). Vermont case law has repeatedly affirmed § 1201(a)(2) convictions where a defendant is found slumped over at the wheel, asleep or unconscious, with the keys in the ignition. See *State v. Blaine,* 148 Vt. 272, 274, 531 A.2d 933, 934 (1987); *State v. Trucott,* 145 Vt. 274, 281–82, 487 A.2d 149, 153–54 (1984); *State v. Godfrey,* 137 Vt. 159, 161, 400 A.2d 1026, 1026–27 (1979).

In the instant case, defendant was found at the wheel, slumped over and either asleep or unconscious, with the keys either in the ignition or on the dashboard. Defendant admitted to Officer Snyder that he had had "a few beers," and he testified that he had had three or four "swigs" of Jack Daniels. Snyder testified that defendant had the odor of alcohol on his breath, staggered while walking to a nearby car, and nearly fell over when he tried to lean against it. Moreover, Snyder's testimony that defendant refused to take the alco-sensor test was an isolated event during the trial. The refusal evidence was not referred to again during Snyder's testimony and was not referred to at all during defendant's testimony, either closing argument, or any other time during the trial. We conclude that "it is clear beyond a reasonable doubt that the [jury] would have rendered a judgment of guilty absent the offending evidence." *State v. Percy,* 149 Vt. 623, 629, 548 A.2d 408, 411 (1988).

We note that the parties have not briefed the question of which harmless-error standard to apply here. See, e.g., *Chapman v. California,* 386 U.S. 18, 24 (1967) (beneficiary of federal constitutional error must establish that error was harmless beyond a reasonable doubt); *United States v. Lane,* 474 U.S. 438, 449 (1986) (for errors that are not of constitutional magnitude, Fed. R. Crim. P. 52(a) (identical to V.R.Cr.P. 52(a)) requires reversal only where the error results in actual prejudice "because it 'had substantial and injurious effect or influence in determining the jury's verdict'") (quoting *Kotteakos v. United States,* 328 U.S. 750, 776 (1946)). The Vermont harmless-error rule appears in need of clarification. See, e.g., *State v. Hunt,* 150 Vt. 483, 489–90, 555 A.2d 369, 373–74 (1988) (defendant must demonstrate prejudice in order to obtain reversal for violation of constitutional right to due process); *State v. Percy,* 149 Vt. at 629, 548 A.2d at 411 (to avoid reversal for violation of a defendant's

federal constitutional rights, State must prove error harmless beyond a reasonable doubt). Because we conclude in this case that the error, if any, does not warrant reversal under even the strictest of harmless-error standards, we need not reach the issue of what standard to apply in this case and expressly decline to do so.

*Affirmed.*