(text box: 1) 
NO. 5-01-0081

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Jackson County.  

)

v. ) No. 00-DT-122

)

JOHN A. BROOKS, ) Honorable

) Kimberly Dahlen, 

Defendant-Appellant. ) Judge, presiding.  

___________________________________________________________________________

JUSTICE CHAPMAN delivered the opinion of the court:

After a second jury trial, John A. Brooks (defendant) was found guilty of driving under the influence of alcohol (DUI).  Defendant was sentenced to serve 12 months of probation, to pay a $600 fine, costs, and a $25-per-month probation fee, to attend DUI counseling, and to pay $100 for the services of his appointed assistant public defender.  Defendant now appeals from his conviction, claiming that he was denied a fair trial due to the ineffective assistance of his appointed trial counsel.  The sole issue for review is whether defendant was denied the effective assistance of counsel.  We affirm.

I.  FACTS

On March 26, 2000, defendant was arrested and charged with DUI in violation of section 11-501(a)(2) of the Illinois Vehicle Code (625 ILCS 5/11-501(a)(2) (West 2000)).  The court appointed an assistant public defender to represent defendant.  Prior to the trial, defendant's appointed counsel filed only one pretrial discovery motion.  On October 3, 2000, the jury trial commenced.  After each of the parties had rested, the jurors deliberated for several hours.  During its deliberations, on two separate occasions the jury indicated that it was unable to reach a unanimous verdict.  Ultimately, the trial was declared a mistrial due to the jurors' continued inability to reach a unanimous verdict.  On December 5, 2000, the case was recalled for a jury trial, and the same assistant public defender continued as defendant's appointed counsel.  Prior to the December 5, 2000, jury trial, defendant's counsel did not file a single pretrial motion.  

Testimony from the prosecution's witnesses indicated that, at approximately 1 a.m. on March 26, 2000, two Murphysboro police officers noticed defendant's vehicle stopped at a green light.  After the traffic light turned yellow, defendant's vehicle turned left.  The two officers (riding in the same squad car) followed defendant for about a mile.  The officers observed defendant's vehicle swerve across the centerline, then swerve across the shoulder line, and then swerve again across the centerline.  They then stopped defendant and approached his vehicle.  There were three persons in the vehicle:  defendant, his wife, and their six-year-old son.  The officer who approached defendant's side of the vehicle detected an odor of alcohol.  The officer observed that defendant's eyes were red and watery and that his speech was slurred.  Upon being asked for his driver's license, defendant appeared confused and fumbled for his license.  Defendant told the police that he had consumed a few drinks earlier that evening. 

The officers gave defendant a battery of field sobriety tests:  (1) the horizontal-gaze-nystagmus (HGN) test, (2) the one-leg-stand test, (3) the finger-count test, and (4) the walk-and-turn test.  According to the officers, defendant failed the HGN test, the one-leg-stand test, and the walk-and-turn test.  Defendant had difficulty with his balance and swayed from side to side throughout the field sobriety testing.  Defendant, however, did successfully perform the finger-count test.  After performing the field sobriety tests, defendant was asked to submit to breath alcohol testing by way of a portable breath test (PBT) instrument, which he refused.  Defendant was then arrested and transported to the police department.  He was given a citation for DUI and was asked to submit to a breathalyzer test at the police department.  Defendant refused the test and was ultimately taken to the county jail.  Because the officers believed that defendant's wife also may have been intoxicated–she had a strong odor of alcohol, red, watery eyes, and slurred speech and had refused a PBT–she and their son were transported from the scene by another officer.  

Trial testimony revealed that defendant was a 53-year-old commercial pilot at the time of his arrest.  In 1992, defendant suffered a heart attack that required triple-bypass surgery.  The surgery required the removal of veins in both of defendant's legs.  The removal of the veins in defendant's legs was reported to cause poor circulation, swelling, numbness, and a loss of feeling in the bottoms of his feet.  

Prior to being stopped by police, defendant and his family were at a friend's house for a barbeque.  They arrived at their friend's house at approximately 4 p.m. on March 25, 2000, and did not leave until approximately 12:30 a.m. on March 26, 2000.  Defendant stated that he had consumed approximately four or five mixed drinks from the time he arrived until approximately 9:30 p.m., at which time he took a three-hour nap before leaving the house.  Defendant was noted as having a "good buzz" before taking his nap at 9:30 p.m. but was not thought to be intoxicated at the time he left the house.  

At the trial, defendant admitted to crossing the centerline of the road, but he claimed that he did so only in response to a car rapidly approaching behind him.  Defendant testified that once the car behind him slowed, he realized that the vehicle was a police car and he pulled over on the shoulder of the road.  Defendant denied stumbling after exiting his car.  Defendant believed that he performed the walk-and-turn test as directed.  Also, defendant testified that he performed poorly on the one-leg-stand test because of swelling, numbness, and a lack of feeling in his feet.  Finally, defendant denied that he was asked to submit to a breathalyzer test at the police station, and he claimed that it was not until he read the arresting officer's report that he became aware that he was reported to have denied such testing.  

The jury found defendant guilty of DUI.  Defendant filed a timely appeal.

II.  ANALYSIS

Defendant now argues that he was denied a fair trial, as guaranteed by the sixth amendment of the United States Constitution, because of the ineffective assistance of counsel.  Specifically, defendant claims that his trial counsel was ineffective because (1) he failed to object to the admission of testimony regarding defendant's refusal to submit to a PBT, as well as testimony regarding its availability and accuracy, (2) he failed to object to the admission of testimony regarding the HGN field sobriety test performed upon defendant and on cross-examination he elicited damaging testimony regarding such testing, (3) he failed to file a motion to quash defendant's arrest, on the basis of a lack of probable cause, and (4) he failed to implement a trial strategy.  

The effective assistance of counsel, as guaranteed by the sixth amendment right to counsel, is measured by a test of whether the defendant received "reasonably effective assistance."  
Strickland v. Washington
, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052, 2064 (1984).  In order to establish an ineffective-assistance-of-counsel claim, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d 674, 104 S. Ct. at 2068.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d 674, 104 S. Ct. at 2068.  In making this showing, a defendant must show both (1) that his or her counsel's performance was deficient and (2) that the deficient performance prejudiced his or her defense.  
Strickland v. Washington
, 466 U.S. at 687, 80 L. Ed. 2d 674, 104 S. Ct. at 2064.  The failure to satisfy either the deficiency prong or the prejudice prong of this test precludes a finding of ineffective assistance.  
Strickland
, 466 U.S. at 687, 80 L. Ed. 2d 674, 104 S. Ct. at 2064. 

An inquiry into the performance of counsel requires an examination of whether the assistance provided the defendant was reasonable, considering all the circumstances surrounding the challenged conduct from counsel's perspective at the time.  
Strickland
, 466 U.S. at 688-89, 80 L. Ed. 2d 674, 104 S. Ct. at 2065.  The defendant must overcome the strong presumption that counsel provided adequate assistance and exercised reasonable professional judgment in making all significant decisions.  
Strickland
, 466 U.S. at 690, 80 L. Ed. 2d 674, 104 S. Ct. at 2066.  Establishing that counsel has committed professional error does not warrant a reversal if the error had no effect on the judgment.  
Strickland
, 466 U.S. at 691, 80 L. Ed. 2d 674, 104 S. Ct. at 2066-67.

We first address defendant's contention that his counsel's representation constituted the ineffective assistance of counsel because his attorney failed to prevent the admission of testimony regarding defendant's refusal to submit to a PBT, by either filing a pretrial motion or making objections at the trial.  The prosecuting attorney elicited the following testimony from one of the police officers, without objection from defense counsel:

"Q.  And did you have any instruments with you that evening to measure breath alcohol content?

A.  We do have [PBT] instruments at our police department that we can utilize during a traffic stop involving alcohol.

Q.  And did you have one with you that evening?

A.  Yes.

Q.  What kind of a device is that, or how is it used?

A.  A [PBT] is a smaller instrument that's used for recording a field level of blood[-]alcohol content in the system.  It's not as scientifically accurate as the breath instrument used at the police department that's stationary.  However, it will record if there is alcohol in the system or not.

Q.  And what's the procedure for giving a test with that instrument?

A.  We request [that] the driver take the test.  We produce the instrument.  We produce a sterile[,] sealed tube that the driver puts to their [
sic
] lips and blows a breath through, and then the instrument reads any alcohol in the system.

Q.  Did you ask the defendant to take a test with that instrument while you were on the scene?

A.  Yes, I did.

Q.  Did he do that?

A.  No, he did not.

Q.  Did he give you any reason why he didn't want to do that?

A.  Honestly, I don't recall his reason specifically."

Defendant notes that Illinois courts have held that PBT results are not admissible in the State's case in chief to prove the defendant's intoxication.  
People v. Rose
, 268 Ill. App. 3d 174, 178, 643 N.E.2d 865, 868 (1994); 
People v. Halsey
, 273 Ill. App. 3d 160, 652 N.E.2d 434 (1995).  Defendant argues that because the results of a PBT are inadmissible, testimony regarding defendant's refusal to submit to the testing is equally inadmissible, as well as any testimony concerning its availability and accuracy.  Furthermore, defendant argues that counsel's failures in this regard constituted professional error that resulted in prejudice and adversely affected the outcome of his trial.  

Police officers may use PBT results to determine whether probable cause exists to arrest a person for driving under the influence.  
Rose
, 268 Ill. App. 3d at 178, 643 N.E.2d at 868.  PBT results may be used as an investigative tool similar to field sobriety tests.  
People v. Davis
, 296 Ill. App. 3d 923, 928, 695 N.E.2d 1363, 1366 (1998); 
Rose
, 268 Ill. App. 3d at 181, 643 N.E.2d at 870.  While other field sobriety tests involve human observations of a person's behavior, PBT instruments scientifically measure an aspect of a person's body chemistry.  
Rose
, 268 Ill. App. 3d at 181, 643 N.E.2d at 870.  Because of this critical difference, the Department of Public Health has issued regulatory safeguards governing any body chemistry testing.  
Rose
, 268 Ill. App. 3d at 181, 643 N.E.2d at 870.  Consequently, chemical test results are admissible only if the State can show that the instruments used to conduct these tests complied with all the proper statutory and regulatory standards outlined in section 11-501.2 of the Illinois Vehicle Code (625 ILCS 5/11-501.2 (West 2000)).  
People v. Orth
, 124 Ill. 2d 326, 340, 530 N.E.2d 210, 216-17 (1988).  PBT instruments (unlike breathalyzers) do not meet these stringent requirements for admissibility and, thus, neither do the results.  
Rose
, 268 Ill. App. 3d at 181, 643 N.E.2d at 870.

In the instant case, the State argues that Sergeant Lerge's testimony regarding defendant's refusal to take the PBT was not elicited for the purpose of proving intoxication but that, rather, the testimony was sought for the purpose of showing that defendant had a guilty mind–
i.e.
, that the results of the PBT would incriminate him.

We find this to be a distinction without a difference as it pertains to the potential for substantial prejudice.  Evidence of a defendant's refusal to take a test, the results of which are inadmissible, is not relevant evidence of a defendant's innocence or guilt and could lead a jury to draw unwarranted inferences that the defendant declined the test because he or she was guilty.  The dangers of allowing testimony of a defendant's refusal to submit to scientific testing that is otherwise inadmissible have been recognized by the appellate court in other contexts.  

In 
People v. Eickhoff
, 129 Ill. App. 3d 99, 471 N.E.2d 1066 (1984), the court affirmed the circuit court's grant of a defendant's motion to suppress a request, and subsequent refusal, to submit to polygraph testing.  The 
Eickhoff
 court stated, "Testimony that a defendant was offered a polygraph test, or that he refused one, interjects into the case inferences which bear directly on his guilt or innocence: either he failed the test *** or he refused to submit to testing in fear that his guilt would be shown."  
Eickhoff
, 129 Ill. App. 3d at 103, 471 N.E.2d at 1069.  Accordingly, the 
Eickhoff 
court instructed, "That which may not be accomplished directly by evidence of polygraph test 
results
 may not be accomplished indirectly by references to whether a defendant sought, declined, or was offered a polygraph test."  (Emphasis in original.)  
Eickhoff
, 129 Ill. App. 3d at 103, 471 N.E.2d at 1069.  In discussing the potential negative effect of allowing testimony of a defendant's refusal to submit to polygraph testing, the court examined cases from other jurisdictions that had addressed the issue.  The 
Eickhoff
 court quoted the insights of the Supreme Court of New Jersey:

" 'In terms of degree of prejudice, the average jury, unfamiliar with the present scientific uncertainty of the test, might very well be even more affected by proof of a defendant's refusal to take the test than by the evidence of results adverse to him coupled with proof of its scientific imperfection.  A refusal might be regarded as indicating a consciousness of guilt.' "  
Eickhoff
, 129 Ill. App. 3d at 104, 471 N.E.2d at 1069 (quoting 
State v. Driver
, 38 N.J. 255, 261, 183 A.2d 655, 658 (1962)).

Though 
Eickhoff
 and the cases discussed therein focus on the testimony of a defendant's refusal to submit to requested polygraph testing, we find many of the concerns highlighted in those cases to be identical to those in the case 
sub judice
.  

Here, the PBT testimony elicited by the State in its case in chief provided the jury with evidence that a PBT was available and offered to defendant, that the PBT could record the blood-alcohol content of defendant, and that defendant refused to submit to such testing.  However, there is no indication that the jury was familiar with the scientific uncertainty of the PBT's ability to determine whether defendant's level of blood-alcohol content exceeded the legal limit.  Accordingly, the jury might very well have been even more affected by the proof of defendant's refusal to take the test than by the evidence of adverse PBT results coupled with proof of its scientific imperfection.  The fear is that the jury could infer defendant's guilt from his refusal to submit to a test, even though the results of the test are inadmissible to prove defendant's guilt.

Accordingly, we hold that testimony regarding a defendant's refusal to submit to a PBT–as well as any evidence of the test's accuracy or availability–is inadmissible in the State's case in chief.  However, we do not conclude in this case that defendant was substantially prejudiced by the admission of this testimony.

There was credible testimony at the trial that defendant also refused the breathalyzer test at the police station.  Breathalyzer machines do not inherently suffer from the same scientific uncertainty that affects PBT machines.  The admissibility of breathalyzer test results is well established, and therefore, to prove intoxication, the prosecution may utilize both the test results and the refusal to take the test.  See 
Rose
, 268 Ill. App. 3d 174, 643 N.E.2d 865; 
People v. Keith
, 206 Ill. App. 3d 414, 564 N.E.2d 901 (1990).

We believe, however, that in this case any perceptions of guilt the jury may have inferred from defendant's refusal to take the breathalyzer test would have overshadowed any similar perceptions resulting from testimony regarding his refusal to take the PBT.  Because we cannot find that defendant has satisfied the prejudice prong of the 
Strickland
 test, we need not determine whether counsel's performance was constitutionally deficient.  See 
People v. Edwards
, 195 Ill. 2d 142, 163, 745 N.E.2d 1212, 1223-24 (2001).

Next, defendant claims that he was denied the effective assistance of counsel because his attorney failed to object to the admission of testimony concerning HGN testing and actually elicited damaging testimony on the issue.  However, the record reveals that counsel's cross-examination of the arresting officer concerning the administration of HGN testing upon defendant was a calculated decision to try to impeach the credibility of the officer and therefore was clearly a part of counsel's strategy.  In our analysis of defendant's claims we need not illustrate every detail of counsel's conduct concerning the admission of the HGN testimony on the direct examination and the cross-examination of the arresting officer; it is sufficient only that we conclude that such conduct was the result of trial strategy.  "[N]either mistakes in strategy nor the fact that another attorney with the benefit of hindsight would have handled the case differently indicates the trial lawyer was incompetent."  
People v. Vera
, 277 Ill. App. 3d 130, 138, 660 N.E.2d 9, 16 (1995).  Defendant has failed to satisfy the deficiency prong of the 
Strickland
 test and has thereby failed to show that he was denied a fair trial.  

Defendant also contends that counsel's failure to file a motion to quash his arrest, for the lack of probable cause, amounted to the ineffective assistance of counsel.  To render effective assistance, counsel need not file futile motions.  
People v. Muhammad
, 257 Ill. App. 3d 359, 367, 629 N.E.2d 106, 112 (1993).  Defendant concedes that there is a possibility that the motion to quash would not have been granted.  The record, however, establishes that the arresting officers clearly had probable cause to arrest defendant and that a motion to quash would have indeed been denied.  Because the filing of a motion to quash defendant's arrest would have been an exercise in futility, we cannot find that counsel's performance was deficient.  Accordingly, defendant has again failed to satisfy the deficiency prong of 
Strickland
.  

Lastly, defendant contends that he was denied the effective assistance of counsel because of his attorney's failure to employ a trial strategy.  Although defendant initially claims that his counsel did not employ a trial strategy, we find instead that his argument questions the effectiveness of the strategy and tactics that counsel pursued.  Specifically, defendant takes issue with counsel's decision to call certain witnesses, including the decision that defendant testify.  We presume that defense attorneys pursue sound trial strategies.  
Strickland
, 466 U.S. at 689, 80 L. Ed. 2d 674, 104 S. Ct. at 2065.  Trial strategies are unsound only when no reasonably effective criminal defense attorney, facing similar circumstances, would pursue such strategies.  
People v. Faulkner
, 292 Ill. App. 3d 391, 394, 686 N.E.2d 379, 382 (1997).  Because we do not believe that defendant has overcome the presumption that his counsel pursued a sound trial strategy in his defense and because we have noted counsel's use of strategy in attempting to impeach the arresting officer's testimony concerning HGN testing, we reject defendant's claims. 

For the foregoing reasons, defendant's conviction is affirmed.

Affirmed.  

MAAG, P.J., and HOPKINS, J., concur.

NO. 5-01-0081

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Jackson County.  

)

v. ) No. 00-DT-122

)

JOHN A. BROOKS, ) Honorable

) Kimberly Dahlen, 

Defendant-Appellant. ) Judge, presiding.  

___________________________________________________________________________

Opinion Filed
: October 7, 2002

___________________________________________________________________________

Justices
: Honorable Melissa A. Chapman, J.

Honorable Gordon E. Maag, P.J., and

Honorable Terrence J. Hopkins, J.,

Concur

___________________________________________________________________________

Attorney
 Paul Christenson, North 11th & Locust, P.O. Box 1011, 

for
 Murphysboro, IL  62966

Appellant
 

___________________________________________________________________________

Attorneys
 Hon. Michael Wepsiec, Jackson County State's Attorney, Jackson 

for
 County Courthouse, Murphysboro, IL  62966; Norbert J. Goetten, 

Appellee
 Director, Stephen E. Norris, Deputy Director, Patrick D. Daley, 

Staff Attorney, Office of the State's Attorneys Appellate Prosecutor,

Route 15 East, P.O. Box 2249, Mt. Vernon, IL  62864

___________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 10/07/02.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.