2011 VT 74

## State of Vermont v. Jeffrey R. Kinney

[27 A.3d 348]

No. 09-265

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed July 22, 2011

*Michael S. Munson* and *Robert F. Plunkett,* Bennington County Deputy State's Attorneys, Bennington, for Plaintiff-Appellee.

*Matthew F. Valerio,* Defender General, and *Anna Saxman,* Deputy Defender General, Montpelier, for Defendant-Appellant.

¶ 1. **Dooley, J.** A jury convicted defendant Jeffrey Kinney of driving while intoxicated, third offense, and attempting to elude an officer while operating a vehicle. On appeal, defendant argues: (1) the trial court erred in admitting defendant's refusal to take a preliminary breath test; (2) the prosecutor, in closing, impermissibly injected personal opinion about defendant's credibility and commented on defendant's failure to testify; and (3) the State failed to introduce sufficient identity evidence to support the verdict. We affirm.

¶ 2. The facts may be summarized as follows. A Bennington police officer was patrolling in his cruiser at about ten o'clock at night when he observed an all-terrain vehicle (ATV) being driven on the street in Bennington. Although it was dark, the officer was able to observe the driver, whom he recognized as defendant from prior contacts and from his knowledge that defendant owned that particular model of ATV.

¶ 3. As the ATV sped away, the officer followed with his blue lights flashing and siren sounding. The officer testified that he saw a profile of the operator's face when the ATV made a turn onto another road and again when the ATV fishtailed, and that there was sufficient illumination to observe that it was defendant. At trial, the prosecution played a video recording of the pursuit taken by a fixed camera located on the officer's cruiser. The camera, activated when the blue lights are turned on, is located near the rearview mirror and films straight ahead from its mounted position. Although the State later acknowledged that the video, with its "grainy, dark" image, did not offer a good view of the ATV operator, the officer agreed that he "[got] a better look at the [ATV] at that intersection than what [could be seen] on the video" from its fixed position.

¶ 4. The ATV ultimately went over an embankment and the police pursuit continued on foot. Another officer testified that he

found the abandoned two-seat ATV in the woods, followed voices, and found two men, defendant and another individual. Defendant appeared to be intoxicated; he was unsteady on his feet, had slurred speech, and smelled of alcohol. Defendant's clothes generally matched the clothes worn by the driver of the ATV. Defendant told the officer that a third person named Jason Webb had been driving the ATV, and had since taken off running. Defendant also said that he was in the area for a bonfire. The officer saw no signs of a bonfire, and no third person was ever located in the area. The officers recovered the key to the ATV from defendant's pocket.

¶ 5. Defendant was asked at the scene to take a preliminary breath test (PBT) but declined. A later-administered Datamaster test measured defendant's blood alcohol level at .208 and .221, indicating levels of .232 and .245 — three times the legal limit — at the time of operation. The jury returned a verdict of guilty on the charges of driving while intoxicated, third offense, and attempting to elude, and defendant was subsequently sentenced to two to five years imprisonment. This appeal followed.

¶ 6. Defendant first contends the court erred in admitting the investigating officer's testimony that defendant declined to submit to the PBT. The State maintains that the claim was not properly preserved and that the evidence was admissible in any event. Whatever the merits of these arguments, we conclude that the testimony was harmless beyond a reasonable doubt, and therefore provides no basis for reversal. As we have often held, error in the admission of evidence does not compel reversal of a criminal conviction where it is clear beyond a reasonable doubt that the error was harmless, considered in light of the strength of the State's case apart from the offending evidence and the strength of the offending evidence itself. *State v. Kulzer*, 2009 VT 79, ¶¶ 16-17, 186 Vt. 264, 979 A.2d 1031. Both factors compel affirmance here.

¶ 7. The officer testified that he was able to see the ATV driver on more than one occasion during the pursuit and was certain of defendant's identity; this evidence was unequivocal. That the surveillance videotape from the camera on top of the officer's cruiser failed to show the driver as clearly as the officer's visual observations does not seriously undermine this testimony, as the evidence showed that the camera's perspective was stationary and the officer's was not. Thus, the officer's best view of the driver occurred when the ATV slowed and took a sharp turn and the

officer could see the side of the driver's face. The view could not be captured by the stationary video camera.

¶ 8. Even apart from eyewitness identification, the circumstantial evidence was compelling. The ATV matched the one owned by defendant; the officer's description of the driver's clothing matched that worn by defendant; and defendant was found with the key to the ATV in his pocket. Defendant's claims that another person was driving the ATV and that he was attending a bonfire had no evidentiary support beyond defendant's mere assertion. In short, the evidence identifying defendant as the driver was overwhelming. A limited videotape and a claim that the real driver was a third man who was never found do not undermine this conclusion.

■ ¶ 9. As noted, in assessing whether any error was harmless, we must view the strength of the proper evidence in relation to the strength of the evidence claimed to be inadmissible. The evidence in dispute consisted of a brief question and answer in the middle of the investigating officer's extensive trial testimony. The subject was not mentioned again in the testimony of the remaining witnesses, and neither party brought it up in closing argument. Thus, considered in the context of the trial as a whole, and the substantial evidence of guilt, the testimony was clearly harmless beyond a reasonable doubt, and does not warrant reversal of the judgment. See *State v. Curavoo*, 156 Vt. 72, 75, 587 A.2d 963, 965 (1991) (holding that introduction of evidence of defendant's refusal to take PBT was harmless error, if error at all, because "the remaining evidence overwhelmingly establish[ed]" the required elements of the charge).

¶ 10. Defendant's remaining claims relate to the prosecutor's closing argument. He contends the prosecutor improperly injected his personal views of defendant's guilt during closing argument in stating that defendant "lied" to the police about several matters, including defendant's claim that a third person was the ATV operator. He also contends the prosecutor improperly commented on his right to remain silent in observing that defendant failed to "offer any explanation as to where this third person had gone" or other details "about the identity and the whereabouts of this mystery third person." Defendant acknowledges that he failed to object to any of the statements below, and that we review solely for plain error to determine whether the circumstances are so "exceptional [that] . . . a failure to recognize error would result in

a miscarriage of justice, or . . . strike[] at the very heart of the defendant's constitutional rights." *State v. Yoh*, 2006 VT 49A, ¶ 39, 180 Vt. 317, 910 A.2d 853 (quotation omitted).

■ ¶ 11. The alleged errors fall short of this exacting standard. Although we have cautioned against statements that might be construed as expressions of personal belief that the defendant was a liar, the brief statements at issue here were made in the context of a general and impersonal critique of the veracity of defendant's story. See *State v. Gates*, 141 Vt. 562, 567, 451 A.2d 1084, 1086 (1982) (observing that prosecutor's remarks went beyond permissible "general attack on veracity, consistency, or bias"). Indeed, there is nothing here to suggest that the prosecutor was expressing any personal view or belief in defendant's veracity. Rather, the record shows that the prosecutor simply compared defendant's statements made at the scene with the surrounding evidence to demonstrate the obvious incongruities: defendant claimed that a third individual was the driver but, as the prosecutor accurately noted, defendant did not explain "where this third person had gone," and no third person was observed by the officer during the pursuit or was visible in the video recording; defendant claimed to be in the woods for a "bonfire" but no bonfire was found in the vicinity; defendant claimed that a friend had the key to the ATV when, in fact, the key was found in defendant's pocket. The prosecutor was relying on the evidence, not his personal beliefs, to characterize defendant's remarks. Cf. *State v. Ayers*, 148 Vt. 421, 425, 535 A.2d 330, 333 (1987) (finding error in prosecutor's statements that "I think . . . [complainant's] story . . . is the truth" and "I believe the believable testimony here").

¶ 12. Moreover, this was not a pure "credibility contest" between the defendant and his accuser, as in *State v. Rehkop*, 2006 VT 72, ¶ 2, 180 Vt. 228, 908 A.2d 488, where we found that the prosecutor not only "blatantly" stated his personal belief that defense witnesses were lying, but also that his comments may also have affected the verdict. *Id.* ¶ 38; see also *State v. Francis*, 151 Vt. 296, 300, 561 A.2d 392, 394 (1989) (noting danger of prosecutor's personal expression of belief that defendant is lying where case turns strictly on credibility assessments). Here, as noted, the circumstantial evidence that defendant was the operator of the ATV was overwhelming, and we cannot conclude that any conceivable error in the prosecutor's remarks resulted in a miscarriage of justice.

█ ¶ 13. Similarly, viewed in context, the prosecutor's additional remarks concerning defendant's failure to explain the third man's whereabouts conveyed nothing about defendant's right not to testify or to remain silent. Indeed, as noted, defendant readily responded to the officer's inquiries when confronted in the woods, asserting that a third person had driven the ATV. The prosecutor here simply noted certain inconsistencies and omissions in the explanation, such as where the man supposedly went and why he allegedly gave the ATV key to defendant. The prosecutor's remarks do not amount to plain error that strikes at the heart of defendant's fundamental rights. Accordingly, we find no basis to disturb the judgment.

*Affirmed.*

¶ 14. **Johnson, J.,** concurring. I agree that, given these circumstances, the admission of the officer's testimony regarding defendant's refusal to submit to the preliminary breath test (PBT) was harmless. I write separately to emphasize my belief. that the trial court committed error.[1] I would hold that 23 V.S.A. § 1203(f), the statutory section governing preliminary breath alcohol screening tests, prohibits the introduction of PBT refusal evidence.

¶ 15. The trial court, however, relied on our decision in *State v Blouin* to rule that defendant's refusal was admissible. 168 Vt. 119, 716 A.2d 826 (1998). In *Blouin*, we held that evidence of a defendant's refusal to take the horizontal gaze nystagmus (HGN) test, a physical field sobriety test in which a police officer moves an object across the subject's field of vision to observe the manner in which the subject's eyes follow the object, was admissible. *Id.* at 122-23, 716 A.2d at 828. We stated that, barring any statute or rule of law requiring exclusion, evidence of a driver's refusal to perform a physical field sobriety test is probative of guilt, making it relevant and therefore admissible. *Id.* at 121-22, 716 A.2d at 828. Because there is statutory silence regarding physical sobriety tests like the HGN test and thus no statutory language prohibiting introduction of refusal evidence, we concluded that the defendant's refusal to perform the HGN test was admissible to

---

[1] Although the State argues that defendant's challenge of the PBT refusal admission was not preserved, I find the record here sufficiently supports preservation. See V.R.Cr.P. 51; *State v Brink*, 2008 VT 33, ¶ 7, 183 Vt. 603, 949 A.2d 1069 (mem.) (explaining that trial court's definitive ruling on admissibility eliminates need for a renewed objection).

raise a consciousness-of-guilt inference. *Id.* at 122-23, 716 A.2d at 828. The trial court noted that *Blouin* "[s]eems quite parallel" to the instant case, particularly because "the issue is consciousness of guilt as opposed to, necessarily, the accuracy of the test." The trial court saw no difference between a refusal to submit to a PBT and a refusal to perform an HGN test and ruled that evidence of defendant's refusal to take the PBT was admissible.

¶ 16. In *Blouin*, our decision to admit the HGN test refusal evidence relied heavily on the complete statutory silence surrounding physical field sobriety tests such as the HGN. *Id.* at 122, 716 A.2d at 828 ("[T]he [implied consent] statute is silent with respect to physical sobriety tests such as the HGN."). Thus, we broadly concluded that "[i]n the absence of statutory language prohibiting introduction of the [HGN test] refusal evidence, we will not invent it." *Id.* at 122-23, 716 A.2d at 828. Because the HGN test results are admissible, refusal to take the HGN test prevents relevant evidence from being admitted. See V.R.E. 402. The implication is that a refusal in those circumstances raises an inference that the evidence gained from taking the test would be prejudicial. See *State v. Curavoo*, 156 Vt. 72, 74-75, 587 A.2d 963, 964-65 (1991) (concluding that because there is no statutory basis for defendant to refuse to submit to field dexterity test, refusal should be considered evidence of consciousness of guilt). Therefore, we held in *Blouin* that the refusal was probative of guilt and could be admitted to show defendant was guilty. 168 Vt. at 122-23, 716 A.2d at 828.

¶ 17. In contrast, a specific statutory provision governs the use of preliminary breath tests.[2] Section 1203(f) of Title 23 sets forth the purpose and procedure for PBTs:

> When a law enforcement officer has reason to believe
> that a person may be violating or has violated section
> 1201 of this title [by driving under the influence], the

---

[2] Our colleagues' concurrence glosses over the Legislature's choice to create a specific and unique statutory mandate for the admissibility of PBT results — unlike the statutory silence regarding physical field sobriety tests — in its eagerness to equate this situation with that of *Blouin* and to use the broad language of that decision to counsel on this issue. In *Blouin*, we were not faced with the particular statutory language before us now, and we do not "invent" language prohibiting the admission of a suspect's refusal to submit to a PBT when we respect the Legislature's choice to render PBT results substantively inadmissible. See *post*, ¶ 28.

officer may request the person to provide a sample of breath for a preliminary screening test . . . . The person shall not have the right to consult an attorney prior to submitting to this preliminary breath alcohol screening test. *The results of this preliminary screening test may be used for the purpose of deciding whether an arrest should be made and whether to request an evidentiary test and shall not be used in any court proceeding except on those issues.*

23 V.S.A. § 1203(f) (emphasis added). This language specifically prohibits the introduction of PBT results at trial for any purpose except on the issues of making an arrest and requesting an evidentiary test. While individuals may refuse to take a nonevidentiary preliminary breath test, see *State v. McGuigan*, 2008 VT 111, ¶ 17, 184 Vt. 441, 965 A.2d 511 ("Defendant is correct that he may refuse to submit to [the PBT]. The trooper may not physically force him . . . to blow into the PBT device."), the statute does not explicitly address the admissibility of such a refusal. See *Curavoo*, 156 Vt. at 75, 587 A.2d at 965 (declining to decide whether statute prohibits admission of preliminary breath test refusal evidence). I would conclude that the language and purpose of § 1203(f) prohibit the introduction of PBT refusal evidence.

¶ 18. As § 1203(f) demonstrates, the sole purpose of preliminary breath alcohol screening tests is to help police officers in the field develop evidence to support an arrest for driving while intoxicated. See *In re Jones*, 2009 VT 113, ¶ 7, 187 Vt. 1, 989 A.2d 482 (explaining that plain meaning of statute is most basic expression of Legislature's reasonable intent); *Delta Psi Fraternity v. City of Burlington*, 2008 VT 129, ¶ 7, 185 Vt. 129, 969 A.2d 54 (recalling that Court's goal when interpreting a statute is to give effect to intent of Legislature). Indeed, we have acknowledged the limited role and substantive inadmissibility of PBTs in our previous cases. *McGuigan*, 2008 VT 111, ¶ 14 (noting that PBTs are used only to determine whether probable cause exists to believe that an individual has been driving while intoxicated); *State v. Orvis*, 143 Vt. 388, 391, 465 A.2d 1361, 1362 (1983) (holding that results of PBT indicating impairment are inadmissible as evidence but may provide reasonable grounds to believe person is under influence of alcohol).

¶ 19. Like physical field sobriety tests, such as the HGN test or field dexterity tests, PBT results may be used as an investigative tool. Unlike physical field sobriety tests, for which a police officer observes a suspect's behavior, a PBT scientifically measures a person's body chemistry at the site of the traffic stop with a handheld instrument to determine its blood alcohol content. A preliminary breath test is not as accurate as an evidentiary breath test, which is taken with a more sophisticated instrument in a formal office setting. See *Orvis*, 143 Vt. at 391, 465 A.2d at 1362 (explaining that inadmissibility of PBT results at trial reflects determination that more sensitive measurements are easily available and should be used). Accordingly, the PBT statute limits the application of PBT results in court proceedings. See *State v. Hull*, 143 Vt. 353, 355, 465 A.2d 1371, 1372 (1983) ("[H]aving made a determination of the preliminary test's reliability, the [L]egislature chose to limit its use to that of a screening device only, and provided that its results are inadmissible as substantive evidence of intoxication." (citation omitted)); see also *State v. LeBeau*, 144 Vt. 315, 319, 476 A.2d 128, 130 (1984) (noting that results of PBTs are inadmissible as evidence of impairment and may be used to determine whether more accurate testing is appropriate).

¶ 20. The key distinction — ignored by our colleagues — between a PBT refusal and the *Blouin* case is that an individual who refuses a PBT does not prevent relevant substantive evidence from being admitted at trial because the statute prohibits any results from being introduced as substantive evidence of intoxication.[3] It thus undercuts the statutory purpose to admit the refusal to take the nonevidentiary test and would be contrary to the

---

[3] Contrary to our colleagues' assertion, a refusal to perform an HGN test and a refusal to perform a PBT are not "analogous," *post*, ¶ 27, because no statute prevents admission of HGN test results. The physical HGN test, like other field sobriety tests, is based on the subjective observations of an officer who may be cross-examined and does not carry the aura of scientific certainty that surrounds the chemical PBT. The Legislature acknowledged this difference, electing to treat PBTs with specific statutory instructions. We emphasized in *Blouin* that there are no statutory directives regarding physical field sobriety tests such as the HGN. 168 Vt. at 122, 716 A.2d at 828. Our colleagues thus disregard the crucial difference between PBTs — results barred from admission by statute — and standard field sobriety tests — results are admissible as substantive evidence of intoxication. The majority of cases from other states cited to support the contention that a refusal to submit to a PBT is admissible because it goes to consciousness of guilt are, like our *Blouin* decision, situations in which a defendant refused to submit to standard field sobriety tests with admissible results — not preliminary breath tests with

Legislature's reasonable intent to prevent the inaccurate PBT from being used substantively. See *Hull*, 143 Vt. at 355, 465 A.2d at 1372 (explaining that Legislature chose to limit admissibility of PBT results). Moreover, admitting the refusal elevates it to a level of evidentiary significance that is unwarranted when the statute bans the results themselves for that purpose. Cf. *Curavoo*, 156 Vt. at 74-75, 587 A.2d at 964-65 (deciding that refusal to perform field dexterity tests is admissible because no statute or rule requires refusal to be excluded). Courts in other states that have considered this issue have barred the admission of PBT refusal evidence. See *People v. Brooks*, 778 N.E.2d 336, 341 (Ill. App. Ct. 2002) (holding PBT refusal evidence inadmissible where PBT results inadmissible); *State v. Friedman*, No. 2006AP2916-CR, 2007 WL 1486085, at *5 (Wis. Ct. App. May 23, 2007) (unpub.) (holding evidence of PBT refusal inadmissible on issue of guilt or innocence in prosecution's case in chief).

¶ 21. PBT refusal evidence would have particularly limited probative value when introduced to demonstrate consciousness of guilt because of both the variety of possible motivations for such a refusal and the multiple inferential steps required.[4] See

---

statutorily inadmissible results. See *State v. Ferm*, 7 P.3d 193, 196 (Haw. Ct. App. 2000); *Thompson v. State*, 65 P.3d 534, 536 (Idaho Ct. App. 2003); *State v. Sanchez*, 2001-NMCA-109, ¶ 2, 36 P.3d 446. The one case cited allowing admission of a defendant's refusal to submit to a preliminary alco-sensor test involves a state statute that, in contrast to 23 V.S.A. § 1203(f), specifically allows admission of a defendant's refusal to submit to state-administered chemical tests. See *Crusselle v. State*, 694 S.E.2d 707, 710 (Ga. Ct. App. 2010) (under statute in effect at that time). Although they purport to adhere to the statutory text, our concurring colleagues fail to reconcile allowing admission of the PBT refusal with the statutory prescription that the "results of this preliminary screening test may be used for the purpose of deciding whether an arrest should be made and whether to request an evidentiary test and shall not be used in any court proceeding except on those issues." 23 V.S.A. § 1203(f).

[4] The concurrence ignores our precedent regarding the weak probative value of consciousness of guilt evidence where, as in this instance, multiple inferential steps are required, stating instead that "a suspect's *refusal* to submit to the test *certainly implies* some awareness that the test would reveal the suspect's intoxication, or, in other words, some 'consciousness of guilt' of the offense relevant for admission at trial." *Post*, ¶ 27 (second emphasis added). Unlike a refusal to submit to a test whose results are admissible, a refusal to submit to a test with *inadmissible* results may stem from a variety of circumstantially-dependent motivations. The probative value of such a refusal to show consciousness of guilt evidence is weak. Our colleagues suggest that the defendant "remains free to argue that [refusal evidence] is worth little because the refusal was for reasons

*Friedman*, 2007 WL 1486085, at *5 ("[R]efusal to take a PBT is improperly admitted when it is intended to weigh on the guilt or innocence of the [suspect]."). We have stated previously that consciousness of guilt evidence has weak probative value when a chain of inferences is required. See, e.g., *State v. Onorato*, 171 Vt. 577, 579, 762 A.2d 858, 859-60 (2000) (mem.) (noting that evidence of attempted suicide not necessarily "indicative of guilt" because "underlying reasons" can be "numerous and highly complex"); *State v. Perrillo*, 162 Vt. 566, 570, 649 A.2d 1031, 1034 (1994) (observing that evidence of flight weakly probative of consciousness of guilt because of multiple inferential steps required). Just as the Legislature determined that the results are insufficiently accurate for admission at trial on substantive issues, an individual with no consciousness of guilt whatsoever may refuse simply because of the test's inaccuracy. See *Brooks*, 778 N.E.2d at 341 ("Evidence of a defendant's refusal to take a test, the results of which are inadmissible, is not relevant evidence of a defendant's innocence or guilt and could lead a jury to draw unwarranted inferences that the defendant declined the test because he or she was guilty."). In the context of an unreliable test with results that the Legislature deemed inadequate for substantive admission, it is not always the case that "[e]vidence that a motorist refused to perform a sobriety test is probative of guilt, and therefore relevant." *Blouin*, 168 Vt. at 121, 716 A.2d at 828. For example, an innocent person may choose not to take the test because an inaccurate result may falsely provide an officer with probable cause to arrest. See *Onorato*, 171 Vt. at 579, 762 A.2d at 859 (explaining that evidence of flight to avoid prosecution has limited value as consciousness-of-guilt evidence because there are many reasons to explain flight of innocent person). Defendant's refusal to submit to the preliminary breath test is far from the "confession" that the State claimed it to be before the trial court, and allowing a jury to hear evidence of a refusal to take a test whose

_____

unrelated to guilt." *Post*, ¶ 30. The issue before us is whether it is fair to present a refusal to submit to a PBT as evidence of consciousness of guilt in the State's prima facie case when there are multiple reasons for a defendant to refuse to submit to this invasive test. It is the State's burden to prove that a defendant is guilty beyond a reasonable doubt — not the defendant's burden to prove that he is not guilty. The concurrence's solution improperly shifts that burden. Furthermore, it elevates the significance of the refusal over the significance of the test itself, which could lead the jury to elevate the refusal evidence beyond its probative value.

results would be barred introduces confusion and potential prejudice. See *Brooks*, 778 N.E.2d at 342 ("The fear is that the jury could infer defendant's guilt from his refusal to submit to a test, even though the results of the test are inadmissible to prove defendant's guilt."); see also *Onorato*, 171 Vt. at 579, 762 A.2d at 860 ("Because it is highly equivocal and circumstantial, the admissibility of attempted suicide evidence [to show consciousness of guilt] may introduce remote, secondary concerns that might confuse a jury."). To hold otherwise would contravene the Legislature's intent in crafting a specific statutory scheme for PBTs.

¶ 22. If we allow admission of PBT refusals to prove consciousness of guilt, we have eviscerated the statutory prohibition on the admission of PBT results found in § 1203(f). See *Friedman*, 2007 WL 1486085, at *4 ("[E]vidence of . . . refusal to take the PBT . . . , the results of which would have been inadmissible for the purpose offered, is equally inadmissible."). To do so would give a refusal far more weight than the Legislature deemed appropriate for the results themselves. I therefore would hold that evidence of a defendant's refusal to submit to the PBT is inadmissible under § 1203(f), and the trial court's admission of testimony concerning defendant's refusal to take the PBT was error, albeit harmless in this case.

¶ 23. I am authorized to state that Justice Skoglund joins this concurrence.

¶ 24. **Reiber, C.J.,** concurring. I agree that the officer's testimony here concerning defendant's refusal to submit to the PBT had no effect on the verdict. Thus we need not — and do not — decide whether the evidence was admissible. Nevertheless, in light of the separate concurring opinion advocating exclusion of the evidence, I am compelled to state my views to the contrary.

¶ 25. The analysis begins, as always, with the statutory language. See *State v. O'Dell*, 2007 VT 34, ¶ 7, 181 Vt. 475, 924 A.2d 87 (in discerning legislative intent we look first to the plain, ordinary meaning of the statutory language). The DUI statute at issue provides that the "results of [a PBT] may be used for the purpose of deciding whether an arrest should be made and whether to request an evidentiary test and shall not be used in any court proceeding except on those issues." 23 V.S.A. § 1203(f). In reviewing the statute, the trial court here made the sensible observation that the State was not seeking to admit the "results" of a PBT, since it was never administered, and thus the plain

language of the statute did not appear to bar evidence of defendant's refusal.

¶ 26. Plain language to the contrary notwithstanding, it is asserted that admitting evidence of a suspect's refusal eviscerates the statute's underlying purpose. This is a claim that warrants close examination. We addressed the nature and purpose of PBTs in *State v. McGuigan*, explaining that they "are common tools in the investigatory kit officers use to ascertain whether probable cause exists to believe that an individual has been driving under the influence of alcohol." 2008 VT 111, ¶ 14, 184 Vt. 441, 965 A.2d 511. Although the statute reflects a legislative judgment that a PBT's utility consists principally in its use as "a screening device" to determine whether more accurate testing is appropriate, *id.* (quotation omitted), we have recognized that their substantive inadmissibility "does not deprive them of all utility, but merely reflects a [legislative] determination that more sensitive measurements are easily available" for later use. *State v. Orvis*, 143 Vt. 388, 391, 465 A.2d 1361, 1362 (1983). Thus, we have held that the "results of a preliminary breath alcohol screening test which indicate impairment, although inadmissible as evidence, may alone provide the reasonable grounds to believe a person is under the influence of intoxicating liquor." *Id.* at 391, 465 A.2d at 1363.

¶ 27. If — as both the Legislature and this Court have recognized — a PBT bears sufficient utility to establish probable cause to believe that a suspect has been driving while intoxicated, a suspect's *refusal* to submit to the test certainly implies some awareness that the test would reveal the suspect's intoxication, or, in other words, some "consciousness of guilt" of the offense relevant for admission at trial. Indeed, this was precisely our reasoning in *State v. Blouin*, where we considered the analogous situation of a suspect's refusal to perform an HGN test, a standard field sobriety test used for determining probable cause to arrest for DUI. 168 Vt. 119, 716 A.2d 826 (1998). As we there explained, "inasmuch as defendant's refusal to perform the HGN test goes to consciousness of guilt, the refusal evidence is admissible." *Id.* at 122, 716 A.2d at 828 (citation omitted); accord *State v. Curavoo*, 156 Vt. 72, 75, 587 A.2d 963, 965 (1991). Numerous other courts have reached the same conclusion. See, e.g., *State v. Ferm*, 7 P.3d 193, 204 (Haw. Ct. App. 2000) (observing that an "inference of consciousness of guilt" is a "reasonable and permissible inference[] *from* evidence of [a] refusal" to submit to field

sobriety tests); *Thompson v. State*, 65 P.3d 534, 537-38 (Idaho Ct. App. 2003) (holding that defendant's failure to submit to field sobriety tests "which could have confirmed or dispelled the suspicion of intoxication" supports "inference of consciousness of guilt" of DUI); *State v. Sanchez*, 2001-NMCA-109, ¶ 9, 36 P.3d 446 ("The State can use evidence of a driver's refusal to consent to the field sobriety testing to create an inference of the driver's consciousness of guilt.").

¶ 28. It is claimed, nevertheless, that *Blouin* is distinguishable and indeed supports a contrary conclusion because the HGN test — unlike the PBT — is not statutorily inadmissible. The argument is not sustainable. Claims to the contrary notwithstanding, *Blouin* was not based on the absence of statutory language barring the admission of a suspect's HGN test; it was based on the absence of statutory language barring a suspect's *refusal* to submit to the test. As we explained: "In the absence of statutory language prohibiting introduction of the refusal evidence, we will not invent it." *Blouin*, 168 Vt. at 122-23, 716 A.2d at 828. The statute at issue here contains no language prohibiting the admission of a suspect's refusal to submit to a PBT, and we should be similarly disinclined to invent it.

¶ 29. Our colleagues also maintain that *Blouin* is critically distinguishable because the reliability of an HGN test allows the fact finder to infer from a suspect's refusal that "the evidence gained from taking the test would be prejudicial," *ante*, ¶ 16, whereas the purported unreliability of a PBT bars any such inference. Thus, they conclude that allowing evidence of a refusal would undermine the statutory purpose of preventing the PBT from being used substantively. As noted, however, its substantive inadmissibility "does not deprive [a PBT] of all utility, but merely reflects a determination that more sensitive measurements are easily available and therefore should be used." *Orvis*, 143 Vt. at 391, 465 A.2d at 1362. Indeed, the PBT is sufficiently reliable and probative of intoxication that a result "which indicate[s] impairment, although inadmissible as evidence, may *alone* provide the reasonable grounds to believe a person is under the influence of intoxicating liquor" in violation of the DUI statute. *Id.* at 391, 465 A.2d at 1363 (emphasis added). It is therefore reasonable — and entirely consistent with the statute — to infer that a suspect's refusal to submit to a PBT indicates some concern that the test would reveal his or her intoxication and is therefore relevant and admissible to show consciousness of guilt.

¶ 30. Our colleagues also claim that refusal evidence in this context would have "limited probative value" because an individual might refuse the test on the basis that he or she distrusted its accuracy or for other reasons not indicative of guilt. *Ante,* ¶ 21. This is an argument for countervailing evidence, however, not for exclusion. As in all contexts, the weight to be accorded the refusal evidence lies with the trier of fact, and a defendant remains free to argue that it is worth little because the refusal was for reasons unrelated to guilt. See, e.g., *State v. Taylor,* 648 So. 2d 701, 704 (Fla. 1995) (rejecting claim that refusal to perform field sobriety tests was not probative of guilt because the refusal may have been "motivated by a factor other than guilt, such as a simple desire to end the encounter," and holding that defendant was "free to offer that explanation in court"). Indeed, this is no different from evidence of flight or other conduct commonly recognized as indicative of a consciousness of guilt, and does not undermine its essential relevance. See *State v. Perrillo,* 162 Vt. 566, 570, 649 A.2d 1031, 1034 (1994) (recognizing that where prosecution presents evidence of flight to show consciousness of guilt, "defendant should in fairness be afforded the opportunity to explain why his absence was consistent with his innocence"). Thus, as the trial court here correctly concluded, the probative weight of the refusal evidence was for the jury, not for the court, to determine.

¶ 31. The concurring opinion also notes that other state courts have barred the admission of PBT refusal evidence. The case law in this area, however, is not entirely uniform. See, e.g., *Crusselle v. State,* 694 S.E.2d 707, 710 (Ga. Ct. App. 2010) (holding that defendant's refusal to submit to preliminary alco-sensor test was "admissible as circumstantial evidence of intoxication and together with other evidence would support an inference that [defendant] was an impaired driver" (quotation omitted)). In any event, the cases cited merely repeat the arguments for exclusion discussed above, and are no more persuasive.

¶ 32. Therefore, if the issue were properly presented, I would hold that evidence of a refusal to submit to a PBT is not barred by 23 V.S.A. § 1203(f).

¶ 33. I am authorized to state that Justice Burgess joins this concurrence.