[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-12674
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 29, 2011
JOHN LEY
CLERK

D.C. Docket No. 4:09-cr-00065-RH-WCS-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRANDON WARE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(March 29, 2011)

Before HULL, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Brandon Ware appeals his convictions for conspiracy to manufacture,

distribute, and possess with intent to distribute more than five grams of cocaine

base, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B)(iii), and possession with intent to distribute more than five grams of cocaine base, in violation of 21 U.S.C. §§ 841(a), (b)(1)(B)(iii). First, Ware argues that the evidence is insufficient to support his convictions. Ware next argues that the cumulative effect of six alleged evidentiary errors prejudiced his trial. We affirm both convictions.

## I. *Sufficiency of the Evidence*

Ware contends the district court erred in denying his motion for a judgment of acquittal because the evidence against him proves nothing more than aiding and abetting, not a conspiratorial agreement. He argues there was no evidence he had any knowledge of an agreement or willfully participated in the conspiracy.

"We review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the verdict." *United States v. Thompson*, 473 F.3d 1137, 1142 (11th Cir. 2006).

> The jury gets to make any credibility choices, and we will assume that they made them all in the way that supports the verdict. It is not enough for a defendant to put forth a reasonable hypothesis of innocence, because the issue is not whether a jury reasonably could have acquitted but whether it reasonably could have found guilt beyond a reasonable doubt.

*Id.* (citations omitted).

We are bound by the jury's credibility determinations unless the testimony is "'incredible as a matter of law.'" *United States v. Calderon*, 127 F.3d 1314, 1325 (11th Cir. 1997) (quoting *United States v. Hewitt*, 663 F.2d 1381, 1385–86 (11th Cir. 1985)), *modified on other grounds by United States v. Toler*, 144 F.3d 1423, 1427 (11th Cir. 1998). Testimony is incredible only if it relates to "'facts that [the witness] physically could not have possibly observed or events that could not have occurred under the laws of nature.'" *Id*. (alteration in original) (quoting *United States v. Rivera*, 775 F.2d 1559, 1561 (11th Cir. 1985)). "[W]hen a defendant chooses to testify, he runs the risk that if disbelieved the jury might conclude the opposite of his testimony is true." *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995) (internal quotation marks omitted).

To convict Ware of conspiracy, the government had to prove (1) that a conspiracy existed; (2) that Ware knew about the conspiracy; and (3) that Ware knowingly joined the conspiracy. *See United States v. Molina*, 443 F.3d 824, 828 (11th Cir. 2006). The defendant's knowing participation may be proven by direct or circumstantial evidence. *United States v. Miranda*, 425 F.3d 953, 959 (11th Cir. 2005). And the existence of an agreement is often "'proved by inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme.'" *Molina*, 443 F.3d at 828 (quoting *United States v. Ayala*, 643 F.2d 244,

248 (5th Cir. 1981)). In a conspiracy case, "presence and association are material and probative factors that a jury may consider in reaching its verdict." *United States v. Lluesma*, 45 F.3d 408, 410 (11th Cir. 1995). We will uphold a conspiracy conviction "'when the circumstances surrounding a person's presence at the scene of conspiratorial activity are so obvious that knowledge of its character can fairly be attributed to him.'" *Molina*, 443 F.3d at 828 (quoting *United States v. Figueroa*, 720 F.2d 1239, 1246 (11th Cir. 1983)).

To convict Ware of possession "the government must have proved beyond a reasonable doubt that he knowingly possessed the drugs with intent to distribute them." *See Thompson*, 473 F.3d at 1142. "Possession can be actual or constructive and can be shown through direct or circumstantial evidence." *Id*. Constructive possession "'can be proven by a showing of ownership or dominion and control over the drugs or over the premises on which the drugs are concealed.'" *United States v. Woodard*, 531 F.3d 1352, 1360 (11th Cir. 2008) (quoting *United States v. Clay*, 355 F.3d 1281, 1284 (11th Cir. 2004)).

In the instant case, sufficient evidence supported Ware's convictions. Although "[m]ere presence at the scene of a crime is insufficient to support a conspiracy conviction," *Miranda*, 425 F.3d at 959 (internal quotation marks omitted), this appeal is not about mere presence. Ware leased a small apartment

and was in control of who lived there. Ware associated with drug dealers, and he allowed a known major drug dealer—his co-defendant—to live with him. Ware was arrested just outside his apartment, coming from the direction of his apartment. Just after Ware's arrest, in his kitchen, in plain view, were two recently prepared crack cocaine cookies and various items used to produce and distribute crack cocaine—a triple-beam scale, a measuring cup, mixing bowls, a digital scale, a razor blade, and a fork.

Officers found .4 grams of crack cocaine and drug paraphernalia in Ware's bedroom. Ware testified his only income was unemployment, which did not cover the monthly costs of his apartment, yet Ware had over $600 in his pocket when he was arrested. He said he was coming from his uncle's house, not from his apartment, when he was arrested. Ware offered explanations for the cash in his pocket and for the cocaine and drug paraphernalia in bedroom. He denied any involvement in the conspiracy and testified he never used or sold cocaine. The jury heard Ware's testimony, observed his demeanor, evaluated his truthfulness, and were free to discredit any and all of his statements. Indeed, "a statement by a defendant, if disbelieved by the jury, may be considered as *substantive evidence* of the defendant's guilt." *Brown*, 53 F.3d at 314.

The leasing agent for Ware's apartment testified that she had previously

5

seen a scale, little plastic baggies, and a white substance that "could have been drugs" in Ware's apartment. As discussed in more detail below, the apartment manager's testimony was permissible, and the jury was free to accept or reject the inferences raised by her testimony.

Another witness, who was in county jail on unrelated charges at the time of Ware's trial, testified that she never bought drugs from Ware, but that he sometimes sold crack. She testified that she saw Ware sell drugs more than one time. On cross-examination, she admitted that before trial, she told defense counsel that she had never seen Ware sell drugs. The jury heard about these inconsistencies and knew that this witness believed that if she cooperated with law enforcement, then she might receive favorable treatment in her own case. This testimony was not "incredible as a matter of law." This witness was subject to cross-examination, and the jury was entitled to credit this testimony as it saw fit.

The evidence—Ware's association with known drug dealers, and other drug dealers; the cocaine cookies and drug equipment in plain view in his apartment; the $602 in his pocket—reasonably indicates more than "mere presence" in the midst of an overt drug manufacture and distribution operation. The evidence could reasonably "give rise to a permissible inference" that Ware knowingly participated in an agreement with his co-defendant to manufacture and distribute

6

cocaine. *See United States v. Westry*, 524 F.3d 1198, 1213–14 (11th Cir. 2008) (per curiam) (concluding that evidence of the defendant's associations, residence, and involvement could support a reasonable inference of participation in the conspiracy). Ware also constructively possessed the cocaine in his apartment. Together with the blatant drug operation conducted therein, the jury also could reasonably infer from this evidence the elements to support the possession charge.

Because all of the evidence, including the inferences the jury could draw from Ware's testimony, was sufficient to convict him on the conspiracy and possession counts, the district court did not err in denying his motion for judgment of acquittal.

## II. *Cumulative Effect of Alleged Evidentiary Errors*

We next address whether the cumulative effect of the allegedly inadmissible evidence constitutes plain error. Evidentiary errors raised for the first time on appeal are reviewed for plain error. *United States v. Baker*, 432 F.3d 1189, 1202 (11th Cir. 2005). To establish plain error, a defendant must show that there was an "(1) error, (2) that is plain, and (3) that affects substantial rights. Once these three requirements are satisfied, we have the discretion to provide relief if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Henderson*, 409 F.3d 1293, 1307 (11th Cir. 2005)

(citation omitted). An error is "plain" if it is obvious or clear under current law. *Baker*, 432 F.3d at 1207. "An error that affects substantial rights is one that affected the outcome of the district court proceedings." *Henderson*, 409 F.3d at 1308 (internal quotation marks omitted). Even where individual errors do not rise to the level of prejudicial error, the cumulative effect of several non-reversible errors can so prejudice the right to a fair trial that reversal is necessary. *Baker*, 432 F.3d at 1223.

Ware did not contemporaneously object to any of the alleged evidentiary errors, except for his third claim. Therefore, all his evidentiary claims except his third are reviewed for plain error. Ware argues the district court erroneously admitted the following inadmissible and prejudicial evidence: "(1) prejudicial hearsay evidence of his co-defendant's involvement in a shooting; (2) statements obtained during custodial interrogation without a valid waiver of *Miranda* rights; (3) post-arrest silence; (4) evidence of Ware's arrest on an unrelated warrant; (5) improper lay witness identification of alleged drugs; and (6) patently incredible testimony of a plea bargaining addict-informant."

## A. Ware's First and Fourth Claims

In his first claim, Ware argues a leasing agent's testimony about a shooting at Ware's co-defendant's former residence was inadmissible hearsay, irrelevant to

8

the prosecution of Ware, and prejudicial as showing the bad character of Ware. In his fourth claim, Ware contends that a police officer's testimony regarding Ware's arrest on unrelated outstanding warrants was inadmissible because it served only to show his bad character, which is inadmissible pursuant to Federal Rule of Evidence 404(b).

Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed. R. Evid. 403. However, "Rule 403 is an extraordinary remedy, which should be used only sparingly, and the balance should be struck in favor of admissibility. Thus, in reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *United States v. Edouard*, 485 F.3d 1324, 1344 n.8 (11th Cir. 2007) (alterations, citations, and quotation marks omitted).

First, the leasing agent's testimony was not hearsay because it was not offered to prove the truth of the matter asserted—it was offered to explain the sequence of events that led to Ware and his co-defendant living together. *See* Fed. R. Evid. 801(c); *United States v. Jiminez*, 564 F.3d 1280, 1288 (11th Cir. 2009). And the testimony was not irrelevant to the prosecution of Ware—it was relevant to explain why Ware's co-defendant left his previous apartment and how Ware

9

ended up living with him. And any possible prejudice from this testimony was minimized by the government's repeated explanation at trial that Ware had nothing to do with the shooting. While we may have excluded this testimony if we were in the trial judge's position, we cannot say, on plain error review, that the district court plainly erred by admitting this evidence.

It was also not error under Rule 404(b) for the district court to admit the officer's testimony. Extrinsic evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's character in order to show action in conformity therewith. Fed. R. Evid. 404(b). But the officer's testimony was not admitted to show that Ware had a criminal disposition and would act in conformity therewith. Instead, it was relevant to explain why the officer arrested Ware. *See United States v. US Infrastructure, Inc.*, 576 F.3d 1195, 1210 (11th Cir. 2009); *cert. denied*, 130 S. Ct. 1918 (2010) ("Rule 404(b) does not apply when the other act evidence is linked in time and circumstances with the charged crime and concerns the context, motive or setup of the crime; or forms an integral part of the crime; or is necessary to complete the story of the crime."). Without this testimony, the jury would be left wondering why Ware was arrested as he was walking from the direction of his apartment. And it is clear the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice because the

government explained that the warrants were for unpaid traffic tickets.

Consequently, no error, much less plain error occurred, and Ware fails on his first and his fourth evidentiary claims.

### B. Ware's Second Claim

Statements made in violation of *Miranda v. Arizona*, are not admissible at trial. 384 U.S. 436, 444, 86 S. Ct. 1602 (1966). Ware asserts that his post-arrest statements to two police officers were inadmissible because the government made no showing that he was informed of his *Miranda* rights prior to talking to each of the officers. But even assuming that Ware was not given the *Miranda* warnings, he has not shown that, in the context of the trial, any alleged *Miranda* error affected his substantial rights. *Henderson*, 409 F.3d at 1307. Ware's statements were one piece of evidence in a trial which produced other strong evidence of guilt. Further, Ware chose to testify, he had the opportunity to explain and defend any statements made to the officers, and the jury was free to believe or disbelieve him. *See United States v. Turner*, 474 F.3d 1265, 1279–80 (11th Cir. 2007). Ware has not shown that any possible *Miranda* error affected the outcome of the district court proceedings, and therefore Ware did not meet the third prong of the difficult

11

plain error test.[1]

## C. Ware's Third Claim

During trial, Ware testified that another individual was using his bedroom as an overnight guest, and that Ware was sleeping on the couch. In rebuttal, the government re-called the arresting officer, who testified that Ware told him that the individual did not live there, but was visiting to get a power cord for a video game, and had nothing to do with anything inside the apartment. The government then asked the officer, "[a]nd did Mr. Ware say anything like, I have been sleeping on the sofa; I don't know what's in my bedroom?" To which the officer replied, "No, sir. He didn't volunteer any kind of information like that." Ware argues the district court erroneously admitted this evidence of his post-arrest silence in violation of *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240 (1976). Ware contemporaneously objected to this alleged evidentiary error, so review this claim for abuse of discretion. *Turner*, 474 F.3d at 1275.

*Doyle* "held that the Due Process Clause of the Fourteenth Amendment prohibits impeachment on the basis of a defendant's silence following *Miranda*

---

[1] Moreover, the majority of the officers' testimony regarding Ware's statements were given in rebuttal to impeach Ware's testimony, so the officers' testimony would have been admissible even absent *Miranda* warnings. *Harris v. New York*, 401 U.S. 222, 225–26, 91 S. Ct. 643 (1971).

warnings." *Anderson v. Charles*, 447 U.S. 404, 407, 100 S. Ct. 2180 (1980) (per curiam). But *Doyle* is inapplicable,

> to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all.

*Id*. at 408.

The court did not abuse its discretion in admitting the officer's testimony. Assuming that the arresting officer administered the *Miranda* warnings to Ware,[2] the record reveals that the officer's rebuttal testimony addressed the inconsistency between Ware's post-arrest statement to the officer and his exculpatory testimony at trial, and not Ware's failure to offer exculpatory information on arrest. "The questions were not designed to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement." *Charles*, 447 U.S. at 409. Because the question did not address Ware's "failure to offer exculpatory evidence upon arrest," but rather "simply addressed the context of [Ware's] statement on arrest," *United States v. Dodd*, 111 F.3d 867, 869 (11th Cir. 1997) (per curiam),

---

[2] Alternatively, if Ware was not given the *Miranda* warnings, the *Doyle* prohibition is not implicated. *See United States v. O'Keefe*, 461 F.3d 1338, 1346 (11th Cir. 2006) ("[D]ue process is not violated by the use for impeachment purposes of a defendant's silence prior to arrest, or after arrest if no *Miranda* warnings are given.").

13

the district court did not abuse its discretion in allowing the officer's testimony.

### D. Ware's Fifth Claim

During trial the leasing agent testified that she saw baggies and a white substance in Ware's kitchen during a visit to his apartment. The government elicited that this "could have been drugs," and that baggies were something the agent "associated with drugs." The government subsequently argued to the jury that the leasing agent "recognized these immediately to be drugs and drug paraphernalia." Ware argues that the leasing agent's identification of drugs in his apartment was inadmissible as a lay witness's opinion. He argues it prejudiced his defense because it was the only evidence that placed Ware in the apartment in close proximity to drugs.

Pursuant to Federal Rule of Evidence 701, lay witnesses can testify to opinions and inferences "which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. A lay witness's opinion is admissible "only if it is based on first-hand knowledge or observation . . . ." *United States v. Marshall*, 173 F.3d 1312, 1315 (11th Cir. 1999).

The court did not plainly err by admitting this testimony. The leasing agent testified that she observed a white substance, baggies, and a scale in Ware's kitchen. Her testimony that the substance "could have been drugs" was made in context of not only the appearance of the substance, but its proximity to baggies and a scale. This testimony was based on her first-hand observation of the kitchen counter top, and was a rationally based perception. She explained that she associated the baggies with drugs because they were tiny and because she observed them "all over the place" where persons distributed drugs. This was helpful to understand her testimony. Her identifications were not based on expert knowledge, but were permissible under Rule 701.

### E.  Ware's Sixth Claim

Ware contends that the testimony of a government witness, who was a drug user under arrest, was incredible as a matter of law and that the admission of her testimony violated due process. But in federal criminal cases, everyone is competent to testify except (1) a person who refuses to declare that he or she will testify truthfully, (2) the presiding judge, and (3) any member of the jury hearing the case. *See generally* Fed. R. Evid. 601–615. As we previously stated, witness credibility determinations are the exclusive province of the jury and may not be disturbed unless the witness's testimony was incredible as a matter of law.

15

*Calderon*, 127 F.3d at 1325. Here, the witness was competent to testify, and her testimony was not "incredible as a matter of law." Accordingly, the district court did not plainly err in admitting her testimony.

Conclusion

In conclusion, of all Ware's evidentiary claims, only one—the second claim—may present an evidentiary error, although not a plain error. The remainder of his claims do not present error at all, and therefore, his claim of cumulative error fails.

**AFFIRMED.**