SKOGLUND, J., dissenting.
¶ 51. The majority improperly conflates a prosecutor's ability to impeach a defendant using the defendant's post- Miranda statements with prosecutorial comments intended to elicit meaning from a defendant's post- Miranda silence. No caselaw supports this conflation; rather, all of the relevant precedent makes clear that commenting on a defendant's post- Miranda silence in this manner is a violation of due process. In this case, moreover, the use of defendant's silence was especially egregious because the State employed it as evidence of guilt in its opening statement, case in chief, and closing argument. Such an error is not harmless. Not only did the evidence of defendant's silence directly attack the only disputed element of the charge, but every court that has confronted a similar constitutional error has concluded that it was not harmless, including this Court. I dissent.
I. Defendant's Fifth and Fourteenth Amendment Rights
¶ 52. A defendant's post- Miranda silence generally cannot be used. See United States v. Moore, 104 F.3d 377, 387 (D.C. Cir. 1997). This rule grew from Fifth Amendment jurisprudence, which "forbids ... comment by the prosecution on the accused's silence." Griffin v. California, 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Although Griffin involved a prosecutor's comment during trial about the defendant's failure to testify, the Supreme Court subsequently held that the rule extends backward to custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 468 n.37, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ("The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation." (citing Griffin, 380 U.S. 609, 85 S.Ct. 1229 )). Indeed, the prophylactic warnings proscribed in Miranda were intended to inform individuals that the constitutional prohibition against using a defendant's silence attaches at the time of custodial interrogation and that any statements made could be used against the individual. Miranda, 384 U.S. at 444, 86 S.Ct. 1602.
*447 ¶ 53. In the foundational case examining the use of silence for impeachment, Doyle v. Ohio, the U.S. Supreme Court held that a prosecutor could not use a defendant's post- Miranda silence to impeach the defendant. 426 U.S. 610, 619, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). In Doyle, the defendants were arrested for participating in a routine marijuana deal and given Miranda warnings. After Miranda warnings were given, the defendants did not provide an alternative explanation for their behavior or protest their innocence, but one defendant asked what was going on. At trial, they took the stand and offered, for the first time, an exculpatory explanation for their participation in the deal. The State argued that it could impeach their testimony on cross-examination by asking the defendants why they had not provided their exculpatory stories or protested their innocence at the time of their arrest. The State did not contend that the defendants' silence could be used as evidence of guilt, but argued that the truth-finding purpose of cross-examination justified the use of the defendants' silence. The Supreme Court rejected this position. Id. at 618, 96 S.Ct. 2240. In doing so, the Supreme Court acknowledged the fundamental importance of cross-examination, but concluded that Miranda warnings contained an implicit assurance that a defendant's silence would not be penalized. Id. Given this implicit guarantee, the Supreme Court emphasized that "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." Id. As a result, the use of defendants' silence in these circumstances violated the Due Process Clause of the Fourteenth Amendment.[6] Id. at 619, 96 S.Ct. 2240.
¶ 54. Subsequently, the Supreme Court made clear that the due process concerns articulated in Doyle do not preclude prosecutors from impeaching defendants with their post- Miranda statements in certain limited circumstances.[7] In Anderson v. Charles, the Supreme Court held that " Doyle does not apply to cross-examination that merely inquires into prior inconsistent statements" made after the defendant received Miranda warnings. 447 U.S. 404, 408, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980) (per curiam). Impeachment using these statements is permissible because "[s]uch questioning makes no unfair use of silence." Id. That is, instead of being "designed to draw meaning from silence," such questions are intended to "elicit an explanation for a prior inconsistent statement" and thus are not unfair uses of silence. Id. at 409, 100 S.Ct. 2180.
¶ 55. In the following years, the circuit courts refined the application of this rule, uniformly concluding that, although a prosecutor may cross-examine a defendant *448 about the subject matter of his statements made post- Miranda, the prosecutor may not draw meaning from the defendant's post- Miranda silence, even if the defendant spoke after receiving Miranda warnings.[8] As a result, whether a Doyle violation occurred hinges on the State's use of the defendant's post- Miranda silence, not whether the defendant spoke after receiving Miranda warnings. For example, in United States v. Canterbury, the Tenth Circuit noted that, although the defendant answered some questions after receiving Miranda warnings, his "partial silence" did not "preclude him from claiming a violation of his due process rights under Doyle." 985 F.2d 483, 486 (10th Cir. 1993). The court then looked to the intent of the prosecutor's questions during cross-examination, particularly a question focusing on the defendant's failure to tell the police that he had been set up.[9] Id. at 485. Because this question was not directed to the defendant's post- Miranda statements, but "was designed to suggest an inference of guilt from the defendant's post-arrest silence," the court concluded that a Doyle violation occurred. Id. at 486.
¶ 56. In addition to the importance of determining if the prosecutor intended to infer guilt from the defendant's silence, subsequent precedent also makes clear that the State's use of a defendant's post- Miranda silence as affirmative proof is an especially offensive violation of due process rights. In Wainwright v. Greenfield, the prosecution attempted to use the defendant's post- Miranda silence as substantive evidence of the defendant's sanity. 474 U.S. 284, 286-87, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986). The Supreme Court held that this use violated the defendant's due process rights. Id. at 295, 106 S.Ct. 634. In doing so, the Supreme Court reviewed its precedent and found that, "unlike Doyle and its progeny, the silence was used as affirmative proof in the case in chief, not as impeachment." Id. at 292, 106 S.Ct. 634. Such a use was "especially egregious," because, unlike Doyle, there was no danger that the prosecution's ability to cross-examine the defendant would be undercut by a rule protecting the use of the defendant's *449 silence during the State's case in chief. Id. at 292, 106 S.Ct. 634 n.8. Moreover, the Supreme Court concluded that the fundamental fairness concerns underlying Doyle applied equally when the prosecutor affirmatively used the defendant's post- Miranda silence to prove his or her sanity. Id. at 295, 106 S.Ct. 634.
¶ 57. Thus, to summarize the current law, the prohibition against using a defendant's post- Miranda silence grew from the core privilege against self-incrimination guaranteed by the Fifth Amendment, Griffin, 380 U.S. at 615, 85 S.Ct. 1229, but now rests on the implicit assurances guaranteed by Miranda warnings and protected by the Due Process Clause. Wainwright, 474 U.S. at 295, 106 S.Ct. 634. Because the use of a defendant's post- Miranda silence is fundamentally unfair, a prosecutor may not draw meaning from a defendant's post- Miranda silence, either during cross-examination or as substantive evidence in its case in chief, even if the defendant spoke after receiving Miranda warnings.[10] Moreover, if the prosecutor improperly employs the defendant's silence in its case in chief, that use is especially egregious.
¶ 58. Given this precedent, the State's use of defendant's post- Miranda silence in this case was error for several reasons. First, the State raised defendant's post- Miranda silence during its case in chief, on redirect examination of the officer.[11] As described above, the relevant caselaw is directly contrary to the proposition that the State may use a defendant's silence as affirmative proof in this manner, even if the defendant spoke after receiving Miranda statements. In Doyle, one of the defendants spoke after receiving Miranda warnings, but the Supreme Court still concluded that "it would be fundamentally unfair ... to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." Doyle, 426 U.S. at 618, 96 S.Ct. 2240. Indeed, in State v. Mosher, this Court expressly focused on the prosecutor's "use of defendant's silence during its case in chief," Mosher, 143 Vt. 197, 205 n.2, 465 A.2d 261, 266 n.2 (1983), and we concluded that it was "error for the State to use defendant's silence as substantive evidence of guilt." Id. at 205, 465 A.2d at 266. Now, the majority abandons our former position merely because the State's substantive use occurred during redirect examination, without explaining why the implicit promise contained in Miranda carries less weight during redirect examination than if elicited during direct examination.
¶ 59. Moreover, even if the majority is correct that, because redirect examination is rehabilitative in nature, it is legally distinct from producing evidence on direct examination, the State did not confine its "rehabilitative" question to the statements defendant made during his DUI processing.
*450 Instead, the prosecutor's question "was designed to suggest an inference of guilt from ... defendant's post-arrest silence" during the months leading up to trial. See Canterbury, 985 F.2d at 486. Because of this improper inference, if the prosecutor had asked defendant this question at any point during the trial,[12] it would have violated Doyle.
¶ 60. On redirect examination of Officer Weinisch, the State asked the officer, "In the three months following this investigation, did the defendant or any of the defendant's friends or relatives, ever call you or the Burlington Police Department, to your knowledge, to indicate that somebody else was driving that night?" Plainly, this question was intended to draw meaning from defendant's silence and was not focused on the statements defendant made during his DUI processing. A similarly improper question occurred in Laury, 985 F.2d at 1301. As in this case, the defendant in Laury stated on cross-examination that, although he did not provide an alibi prior to arrest, he did inform the police that he didn't commit the charged crime. The Fifth Circuit concluded that cross-examination into the statements he made during his arrest was proper. Id. at 1302 (citing Jenkins, 447 U.S. at 240, 100 S.Ct. 2124 ). But the prosecutor also asked the defendant why he hadn't provided his alibi either immediately following his arrest or in the months leading up to trial. The Fifth Circuit held that both of these subsequent questions violated Doyle, even though the defendant made post- Miranda statements to government agents. Id. at 1303-04, 1305. In doing so, the Fifth Circuit acknowledged the distinction between the prosecutor's ability to cross-examine a defendant about the subject matter of his post- Miranda statements and the prosecutor's use of a defendant's post- Miranda silence to imply guilt. Id. As described above, federal court precedent has clearly established that the first is permitted, while the latter is not. See also State v. Hunt, 150 Vt. 483, 500, 555 A.2d 369, 380 (1988) (noting that "the prosecutor may comment to the jury, and use for impeachment, inferences from the statements which [the defendant] made of his own volition" (emphasis added)).
¶ 61. Despite this plain precedent, the majority position allows the State unfettered use of a defendant's silence as long as the defendant spoke after receiving Miranda warnings. This is simply not the law.[13] The question is whether "[t]he questions were ... designed to draw meaning *451 from silence" or "to elicit an explanation for a prior inconsistent statement." Charles, 447 U.S. at 409, 100 S.Ct. 2180. In this case, the State's clear intent was to draw meaning from defendant's silence, because defendant did not make any statements at all during those months leading up to trial. Such use of defendant's silence violated Miranda's implicit assurance that his silence would not be used against him. See Brecht, 507 U.S. at 628-29, 113 S.Ct. 1710 ("[T]he State's references to petitioner's silence after [receiving Miranda warnings], or more generally to petitioner's failure to come forward with his version of events at any time before trial, crossed the Doyle line." (emphasis added)). This was error, and should not stand.
II. Harmless Error
¶ 62. Further, this error was not harmless because the error affected defendant's substantial rights. See V.R.Cr.P. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."). Error is harmless if we can say beyond a reasonable doubt that the jury would have convicted absent the error. See State v. Lynds, 158 Vt. 37, 42, 605 A.2d 501, 503 (1991) ; see also V.R.Cr.P. 52(a).
¶ 63. To begin, contrary to the majority's claim, the appropriate standard for considering whether a Doyle violation was harmless error does not depend solely on "the strength of the State's case apart from the offending evidence and the strength of the offending evidence itself." State v. Kinney, 2011 VT 74, ¶ 6, 190 Vt. 195, 27 A.3d 348. As the Third Circuit recently reiterated in its analysis of a potential Doyle violation, "[C]onstitutional harmless-error analysis is not merely a review of whether the jury 'could have' returned a verdict absent the constitutional error. Such an analysis improperly conflates sufficiency-of-the-evidence review with the appropriate [harmless error] standard." Virgin Islands v. Martinez, 620 F.3d 321, 338 (3d Cir. 2010). Although "[t]he quantum of other evidence indicative of guilt" is one of the factors to be considered, the other four factors include:
1. The use to which the prosecution puts the postarrest silence.
2. Who elected to pursue the line of questioning.
....
4. The intensity and frequency of the reference.
5. The availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions.
Canterbury, 985 F.2d at 487 (quotation omitted); see also *452 Mosher, 143 Vt. at 209-10, 465 A.2d at 268 (analyzing Doyle violation for harmless error based on "whether the comment by the prosecution is extensive, whether the inference of guilt from silence is stressed to the jury as a basis of conviction and whether there is evidence that could have supported acquittal"). "Moreover, the beneficiary of the error, here the State, has the burden of proving that no injury occurred as a consequence of the error." Mosher, 143 Vt. at 208, 465 A.2d at 267.
¶ 64. In this case, because the "mere great weight of evidence of guilt will not obviate a constitutional error," id., the majority's focus on the sufficiency of the evidence and, in particular, whether it was plausible, is inadequate.[14] By ignoring the other factors described above, the majority does not fully consider whether the evidence in question contributed to the conviction. See id. ("[T]he evidence in question must not have contributed to the conviction." (emphasis added)). This is especially true because the other factors dictate that the error was not harmless. For example, the State elected to pursue defendant's silence first and the trial court did not give a curative instruction to the jury.
¶ 65. Most important, the State frequently used defendant's silence to guide the jury's consideration of the core issue disputed at trial: the driver's identity. To convict defendant of driving under the influence, the State needed to prove that defendant operated his vehicle. See 23 V.S.A. § 1201(a)(1). Most of the evidence cited by the majority, circumstantial or otherwise, did not point to the vehicle's operator. The only evidence the State submitted to prove that defendant drove the car was the testimony of the investigating officer and the DUI affidavit.[15] This evidence was countered by the testimony from defendant's mother, cousin, and defendant himself. Thus, in order to establish who operated the vehicle and to find defendant guilty, the jury must have determined that the officer was more credible than the defense witnesses.
¶ 66. To bolster the officer's credibility, the State attempted to discredit defendant's exculpatory version of the events by commenting on defendant's silence. Specifically, the State made four direct references to defendant's silence.
¶ 67. First, the State told the jury in its opening statement that "neither on that *453 night, nor in the months that have passed since the arrest, until about one month ago, at no time did the defendant ... call the Burlington Police Department to tell them that somebody else was driving."
¶ 68. Next, after defendant's cross-examination of the officer established that the officer did not actually see the car's operator and that he lost sight of the vehicle for several seconds on defendant's driveway, the State used defendant's pretrial silence to attack defendant's claim that defendant's cousin drove the car that night. Specifically, the prosecutor asked the investigating officer if defendant had ever, in the months leading up to the trial, called the officer or the Burlington Police Department to "indicate that somebody else was driving that night?" Defendant objected to this line of questioning, pointing out that defendant had no obligation under the Fifth Amendment to provide an exculpatory story to the police. The trial court overruled defendant's objection, and the officer testified that defendant never told him that someone else was driving the vehicle or contacted the police department.
¶ 69. Third, while cross-examining defendant, the State focused on defendant's failure to further protest his arrest and his failure to tell the police during the months leading up to trial that his cousin drove the car. In particular, the State asked whether, "after that night, and the last three months ... [defendant] ever file[d] a complaint with the Burlington Police Department" and pointed out that the trial was "the first time that [defendant] ..., made any kind of public statement." At this point, defendant objected again and the trial court sustained the objection, apparently recognizing the constitutional rights the majority erroneously rejects.
¶ 70. Finally, in the closing arguments, the State highlighted the officer's testimony and again noted "that neither on that night, nor in the months following that incident, did the defendant or any of defendant's family tell [the officer] that anybody besides the defendant was driving the vehicle."
¶ 71. Together these statements demonstrate that defendant's post- Miranda silence was a central theme of the State's case and aimed at influencing the jury's credibility determination. The State's comments about defendant's post- Miranda silence were extensive, continued throughout the proceeding, and were a direct attack on defendant's credibility. The State implied, in all of these instances, that defendant was guilty because defendant failed to provide his exculpatory story at arrest and in the months prior to his trial. As described above, these comments violated settled law. See, e.g., Canterbury, 985 F.2d at 486. Moreover, when evaluating whether Doyle violations influenced a jury's deliberations, appellate courts-and even this Court-have concluded that frequent comments of this nature are not harmless error if the defense's case heavily depends on the defendant's credibility. Compare Mosher, 143 Vt. at 208, 465 A.2d at 267 (finding error was not harmless where State's case turned on credibility of witnesses and prosecutor's extensive comments stressed inference of guilt from silence), with Kinney, 2011 VT 74, ¶ 13, 190 Vt. 195, 27 A.3d 348 (finding no error where prosecutor drew inferences from statements defendant made during his arrest but neither commented on defendant's post- Miranda silence nor raised defendant's silence in opening remarks). For example, in Canterbury, the Tenth Circuit concluded that the Doyle violation was not harmless beyond a reasonable doubt because "the success of the defense hinged almost entirely on the defendant's credibility." 985 F.2d at 487 ; see also Velarde v. Shulsen, 757 F.2d 1093, 1096 (10th Cir. 1985) (concluding chance of prejudice greater when comment on silence *454 occurs in one-day trial, with no curative instruction); United States v. Shannon, 766 F.3d 346, 359 (3d Cir. 2014) (concluding error was not harmless where "credibility was likely important to the outcome of the case").
¶ 72. Despite this clear precedent, the majority concludes that the error was harmless because defendant's post- Miranda statements ultimately would have been admitted to impeach the statements defendant made during his arrest or to rebut the other witnesses' testimony.[16] Ante, ¶¶ 35-36. To reiterate, this is an incorrect summation of the law. The State's use of defendant's statements do not form the basis for the Doyle violation; the error was the State's use of his silence. Because that error was frequent and aimed at undermining defendant's credibility regarding a crucial element of the charge, it was not harmless beyond a reasonable doubt.
¶ 73. I am authorized to state that Justice Robinson joins this dissent.

Critically, the Doyle decision rested on due process grounds, not on the Fifth Amendment privilege against self-incrimination. See Wainwright v. Greenfield, 474 U.S. 284, 291 n.6, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) ; see also Salinas v. Texas, 570 U.S. 178, ---- n. 3, 133 S.Ct. 2174, 2182 n.3, 186 L.Ed.2d 376 (2013) (plurality opinion) (concluding that suspect who stands mute has not done enough to invoke his Fifth Amendment privilege, but noting "that due process prohibits prosecutors from pointing to the fact that a defendant was silent after he heard Miranda warnings" (citing Doyle, 426 U.S. at 617-18, 96 S.Ct. 2240 )).

Use of defendant's prearrest silence for impeachment purposes is permissible. See Jenkins v. Anderson, 447 U.S. 231, 235, 238-39, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) (holding that impeaching defendant's credibility using his or her prearrest silence did not violate either Fifth Amendment's privilege against self-incrimination or fundamental fairness concerns embodied in Fourteenth Amendment).

This is a formulation adopted by all of the circuit courts. See, e.g., United States v. Ware, 420 Fed.Appx. 886, 892-93 (11th Cir. 2011) (finding no error "[b]ecause the question did not address [defendant's] failure to offer exculpatory evidence upon arrest, but rather simply addressed the context of [defendant's] statement on arrest"); United States v. Laury, 985 F.2d 1293, 1304 (5th Cir. 1993) ("Nevertheless, we held in Carter that a Doyle violation does occur where the prosecution comments on the defendant's failure to give an alibi prior to trial but subsequent to the time of arrest."); Smith v. Cadagin, 902 F.2d 553, 559 (7th Cir. 1990) ("The defendant, by the degree of expansiveness of his post-arrest statement, defines the permissible subject matter of any later cross-examination."); Bass v. Nix, 909 F.2d 297, 304 (8th Cir. 1990) ("The key to the inquiry has always been whether the impeachment was based on post-arrest statements contradicting later trial testimony or whether the impeachment was based on silence contradicting later trial testimony. ... Doyle applies when, as in the instant case, the impeachment was based on silence." (citation omitted)); Grieco v. Hall, 641 F.2d 1029, 1034 (1st Cir. 1981) ("This does not mean that any time a defendant makes any post-arrest statement the door is open to full cross-examination about the defendant's failure to recount the exculpatory trial story earlier."); United States v. Curtis, 644 F.2d 263, 271 n.4 (3d Cir. 1981) (concluding Doyle violation occurred because "cross examination was not directed to any prior statement, but solely to post-arrest silence").

The specific question to the defendant was as follows: "[I]sn't it-I'll just rephrase it. Isn't it a fair statement that at no time after your arrest on August 29, either at the Burger King or at the police station, did you ever state to the police officer I've been set up?" Canterbury, 985 F.2d at 485.

As described above, a prosecutor may impeach a defendant using the inconsistent statements he or she made after receiving Miranda warnings. See Jenkins, 447 U.S. at 238-39, 100 S.Ct. 2124.

The majority claims, without citing to any precedent, that, because defendant's counsel raised the exculpatory version of events in a suppression hearing prior to trial, the State was aware of defendant's trial strategy and, as a result, at trial, could comment on defendant's silence prior to defendant presenting his exculpatory story. But defendant did not testify at the suppression hearing and, thus, any comments regarding his silence were first raised by the State in its opening statement. Second, even if defendant did testify at the suppression hearing, it is well-settled that "when a defendant testifies in support of a motion to suppress evidence ... his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." Simmons v. United States, 390 U.S. 377, 394, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) (emphasis added).

In fact, the State did attempt to pursue the same improper questioning in its cross-examination of defendant:
STATE. You never protested, correct?
DEFENDANT. Correct
STATE. And after that night, and the last three months, you-did you ever file a complaint with the Burlington Police Department?
DEFENDANT. I had not.
STATE. Did you ever call the Burlington Police Department to complain about Officer Weinisch's conduct?
DEFENDANT. No.
STATE. And in fact, today is the first time that you, yourself had made any kind of public statement?
At this point, defense counsel objected on Doyle grounds, and the court sustained defendant's objection.

Even the majority relies on precedent that explicitly acknowledges this fundamental distinction between the improper use of a defendant's post-Miranda silence as affirmative proof and the limited exceptions that allow the use of a defendant's post-Miranda statements as impeachment evidence. For example, in Brecht v. Abrahamson, the Supreme Court noted that the State could impeach defendant on the basis of the defendant's silence prior to receiving Miranda warnings, but that once the defendant received Miranda warnings, "the State's references to petitioner's silence after that point in time, or more generally to petitioner's failure to come forward with his version of events at any time before trial, crossed the Doyle line." 507 U.S. 619, 628-29, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (emphasis added); see also Salinas, 570 U.S. at ----, ---- n.3, S.Ct. at 2179, 2182 n.3 (declining to address whether prosecution could use defendant's pre- Miranda silence during noncustodial police interview as part of its case in chief, but noting "that due process prohibits prosecutors from pointing to the fact that a defendant was silent after he heard Miranda warnings"); Portuondo v. Agard, 529 U.S. 61, 69, 120 S.Ct. 1119, 146 L.Ed.2d 47 (2000) ("Griffin prohibited comments that suggest a defendant's silence is 'evidence of guilt.' The prosecutor's comments in this case, by contrast, concerned respondent's credibility as a witness, and were therefore in accord with our longstanding rule that when a defendant takes the stand, 'his credibility may be impeached and his testimony assailed like that of any other witness.' " (citations omitted)); United States v. Carter, 953 F.2d 1449, 1463-64 n.6 (5th Cir. 1992) (analyzing government's comments made during cross-examination, but noting, "[u]se of post-arrest silence for its substantive value is ... prohibited" (emphasis added)); State v. Marshall, 50 Kan.App.2d 838, 334 P.3d 866, 872 (2014) ("Rather than a comment on [the defendant's] silence, it is apparent that here the State is using the incriminating statements made ... to impeach[the defendant's] claim ...." (emphasis added)).

The majority claims that, given the evidence, the State's comments were harmless error because defendant's story was not "reasonably plausible." Ante, ¶ 31. This argument depends on a questionable assumption: the majority assumes the officer testified truthfully and accurately regarding the driver's identity and that the other three witnesses testified falsely. By making this assumption, moreover, the majority improperly conducts its own credibility determination in lieu of the jury and opines on the persuasive effect of the witnesses and testimony. Cf. State v. Parker, 139 Vt. 179, 182, 423 A.2d 851, 852 (1980) ("The trier of fact has the sole determination concerning the weight of the evidence, the credibility of the witnesses and the persuasive effect of the testimony." (citation omitted)).

The majority claims that defendant admitted to driving the car, but this statement artfully blurs the facts. Ante, ¶ 22. The officer testified that defendant answered three questions listed on the DUI affidavit: "Where were you driving to?", "Where were you driving from?", and "How long ago did you drive from that location?" As the officer acknowledged, none of the questions specifically asked whether defendant operated the vehicle and defendant never actually said that he operated the car, although defendant's oral answers to the written questions suggested that he had driven the car. Moreover, the officer and defendant disagreed about the oral statements defendant made pre-Miranda warnings: the officer claimed defendant admitted to driving the car, but defendant testified that he responded negatively when the officer asked him if he operated the car.

In addition to the other errors described, this argument ignores precedent from this Court explicitly rejecting this "relation-back doctrine" of impeachment. In Mosher, we noted that such an argument "assumes without basis that the defendant would inevitably have taken the stand in his own defense" and thus concluded that the State's early introduction of the evidence could have compelled the defendant to testify and defend himself in violation of the Fifth Amendment. 143 Vt. at 207, 465 A.2d at 267.